STEPHEN GAY, impleaded with the Pittsfield and Florence Plank Road Company, Appellant, *v.* FRANCIS KEYS, Appellee.

APPEAL FROM PIKE.

The legislature, by the act of 1851, amendatory of the act of 1849, entitled "An Act to provide for the construction of plank roads, by a general law," did not intend to make a distinction between original subscribers to the stock, and subsequent purchasers.

The word "subscriber," as there used, is to be construed so as to include stockholders of every description.

The plea of "*non-assumpsit*," in an action against a corporation, admits the existence of the corporation, but nothing more.    An averment in the declaration, that the corporation was organized under the general law to promote plank roads, is a material averment, and must be proved on the trial.    *Non constat*, that the corporation was not organized under a special charter, with other, and different, powers and liabilities.

THIS suit was instituted by assumpsit in the court below, by the appellee, against the Pittsfield and Florence Plank Road Company, and Stephen Gay (appellant) and others, who were alleged to be stockholders in said company.

The cause of action set forth in the declaration, was an indebtedness of the Pittsfield and Florence Plank Road Company to the appellee, as shown by several orders drawn by the president and secretary of the company on the treasurer, and in favor of appellee, alleging due demand and nonpayment.

Declaration alleges, that said corporation was incorporated under an act of the legislature of the State of Illinois, entitled "An Act to provide for the construction of plank roads by a general law," in force February 12, 1849. Declaration further alleges, that the several persons joined in the suit with the corporation, were at the time of the accrual of said indebtedness severally stockholders (setting forth the number of shares held by each, and the par value thereof,) in said corporation, and as such jointly and severally liable with said corporation for said indebtedness.

The second count charges that the stock so held by said persons was not stock originally subscribed, but purchased in the market.

Demurrer to declaration overruled.

Defendants pleaded :

1st.   Non-assumpsit.

2nd.   That the personal defendants were not either of them stockholders in said corporation in the number and kind of shares in the declaration alleged.

3rd.   That defendants (the persons aforesaid) were original subscribers for all shares of stock held by them, and that the full amount of all said shares had been fully paid into the treasury of said corporation, in full discharge of their respective liabilities thereon, before the indebtedness in the declaration set forth had accrued.

4th.   Plea sets forth the ownership of the stock of each defendant, as subsequently shown upon the trial, (see bill of exceptions,) and that the amount of said stock had been fully paid in the said corporation before said indebtedness accrued.

5th.   Plea of failure of the consideration of the instruments sued on.

Demurrers were sustained to all the pleas except the first and third, upon which issue was taken.

Trial by the court, who found the issues for the plaintiff against the corporation and the defendants, Gay, Noyes & Hull. Motion for a new trial overruled, and judgment rendered against the corporation for the indebtedness proved, and

against the other defendants respectively, according to amount of stock held by each by purchase.

Exceptions were taken to the overruling of the motion for new trial, and the rendition of judgment. The bill of exceptions shows proof of the indebtedness sued on.

That after the production and proof of the indebtedness set forth in the declaration, against the corporation, it was proved that the defendant, Gay, held at the time the indebtedness aforesaid accrued against the corporation, and still holds twenty-two shares of its stock, the par value of which was fifty dollars per share. That of these shares nine of them had been originally subscribed for by him, and thirteen of them had been purchased by him ; and it was further admitted that the full amount of all of said shares, as originally subscribed and purchased, had been fully paid into the capital stock of the corporation by said defendant, under calls and assessments made according to the charter and by-laws of said company, before the debt was contracted, upon which the instruments of writing sued on this case were founded, and that due demand had been made by plaintiff of the corporation for payment of said indebtedness as alleged in the declaration. This was all the evidence on either side.

The personal defendants severally appealed, and the defendant Gay brings his appeal to this court, (the others to abide his appeal).

Said appellant now assigns for error :

That the court erred in sustaining demurrer to second and fourth pleas, and in not sustaining the same to the declaration.

That the court erred in finding the issues for the plaintiff as against the defendant, and in overruling defendant's motion for a new trial.

That the court erred in rendering judgment upon the evidence against the defendant.

HAY & CULLOM, for Appellant.

This suit appears to have been instituted by the appellee against the Pittsfield and Florence Plank Road Company, in which appellant and others were joined as defendants, in the

court below, claiming a right to recover under the provisions of the general plank road law of the State. See general plank road laws, Purple's Statutes, vol. 1, pp. 253 to 261. See also amendatory act thereto, p. 261.

Appellee insists upon a right of recovery against the personal defendants by virtue of the 27th section of the act. Scates' Comp. 534.

Appellant insists that under the amendatory act of 1851, (page 261, Purple's Statutes), there is no liability beyond the capital stock subscribed and paid in; that he is a subscriber within the proper meaning of the act, and whether regarded as a subscriber or purchaser, he is equally exempted; that if regarded as a holder of stock by purchase, he holds in privity with the original subscriber, represents him, and is entitled to all his rights.

The evidence shows, that appellant, after the assignment to him of the shares purchased, under regular calls, paid up the subscription for said shares, subscribed by the original subscriber. He thus became in effect the subscriber for the stock.

When a subscriber assigns his stock before the whole of the installments are paid, it is held there is such a privity between the corporation and the assignee that it may maintain assumpsit against him for the unpaid installments. Angell & Ames on Corp., p. 545, sec. 534; *Bend* v. *Susquehanna Bridge Co.*, 6 Harr. & Johns. 128; *Huddersfield Canal Co.* v. *Buckley*, 7 Term R. 36; *Hall* v. *U. S. Ins. Co.*, 5 Gill, 484.

But the proper construction and effect to be given to the amendatory act renders the question indifferent as to whether appellant, as to the stock purchased, is to be considered an original subscriber or not.

The act is to be beneficially construed for the purposes intended to be accomplished by it, and an exemption of the subscriber beyond the amount of his stock, by all the analogies of the law, and all reasonable intendment, is also an exemption of those holding the same stock under or in privity with him.

By no other construction could the subscriber have the benefit of the amendatory act.

The stock was expressly made transferable, and it was not designed to clog the transfer of stock, or burthen unequally the stockholders in such corporations.

Privies are, upon general principles, entitled to stand in the place of those under whom they claim, or whom they represent, and it is to be supposed that the legislature, recognizing this rule, deemed it unnecessary to express it in the law.

Could it be pretended that the administrators, or heirs, or legatees of the subscriber, to whom the stock would pass by operation of law, would be liable, whilst the subscriber himself was exempt? And yet these parties would be holders of the stock. There can be but one answer to this question. They hold in privity with the subscriber, and stand in his shoes, with the same immunities he possesses.

And is not a privy by contract in the same category, with (if there is any difference) still stronger claims than the other class, as he pays a consideration?

Will it be contended that the law applies to one class of privies, and not to the other?

The law itself makes no such distinction, and all alike would be included, if the position contended for by the appellee is maintainable; and if the court is to make distinctions where the law has made none, it surely would not make the distinction in favor of privies of the class referred to, over the privy by contract for a valuable consideration. *Delauney* v. *Burnett*, 4 Gilm. 454.

The intention of the legislature was undoubtedly to exempt all holders of stock in this class of corporations from liability beyond the stock subscribed. It did not intend to cripple and destroy these corporations by such a fantastic provision as the opposite construction would make of the amendatory act. Such a provision, with such a construction, would work the dissolution of any corporation in ten years. It would directly create discord and war between the two classes of stock, having unequal liabilities. No stock could be transferred, as no purchaser could be found who would take upon

himself the sole responsibility of all corporate debts to an amount equal to his stock, unaided, and without the right of contribution from the other stockholders. Subscribers to the stock, unable to transfer it by sale, in desperation over the prospect of dying with it on their hands, and leaving it as a legacy of ruin to their children or administrators (who would become the unfortunate holders of the stock without the immunities of their ancestors,) would, as their only mode of escape, abandon and dissolve the organization.

Statutes are to be reasonably construed, so as to effectuate the intention of the legislature, and not to thwart it. And although full or apt language may not have been used in the passage of a law, yet the courts will give it effect according to its reasonable intent.

In construing statutes, an interpretation must not be adopted that will defeat its own purpose. The intention is to govern, although such construction may seem contrary to the letter of the law. *Jackson* v. *Collins*, 3 Cow. 89 ; Bacon's Abr. (Statute) (I), pages 384 to 388 ; Emily and Caroline, 9 Wheat, 384; *Henry* v. *Tillson*, 14 Vt. 479 ; 21 Wend. 211 ; 15 Johns. 238.

But if a literal interpretation of the statute is to be adopted, then the appellant would be strictly within the exemption. He was a subscriber originally for part of the stock held by him.

There was no evidence of the organization of this corporation under the general law. It was in issue by the plea of the general issue, and should have been proved upon the trial.

The general issue admits simply the existence of the corporation. *Nul tiel* corporation would simply have put in issue the existence of the corporation. Any further averments of the declaration, involved in the plaintiff's right to recover, other than the mere corporate existence of the Pittsfield and Florence Plank Road Company, were in issue by the plea of non-assumpsit, and should have been proved. *Old Town and Lincoln R. R. Co.* v. *Veazy*, 39 Me. 571; *Fry* v. *Bank of Illinois*, 5 Gilm. 332.

J. S. IRWIN, for Appellee.

No proof is required of the incorporation of the company. *McIntyre* v. *Preston*, 5 Gilm. 48.

Plaintiff in error cannot insist on the want of such proof, having failed to make the objection below. *Kennedy* v. *Colton*, 28 Barb. N. Y. 58 ; *Orono* v. *Wedgewood*, 44 Me. 49 ; *Reem* v. *Naugatuck*, etc., 33 Penn. 356 ; *Harmon* v. *Thornton*, 2 Scam. 355 ; *Potter* v. *Dennison*, 5 Gilm. 559 ; *Burgwin* v. *Babcock*, 11 Ill. 30 ; *Morris* v. *Trustees*, 15 Ill. 268.

Because by the stipulation on page fifty-three of the record he is estopped from denying it.

There was no error in sustaining plaintiff's demurrer to plea number 2. 1 Chitty Pl. 50 ; *Warner* v. *Crane*, 20 Ill. 151 ; *City of Quincy* v. *Warfield*, 25 Ill. 317.

There was no error in sustaining demurrer to plea number 4. See sec. 27 of Franchises. Scates' Comp., p. 534. Nor does the amended act, on p. 535, release the liability of stockholders. See also *Pettibone* v. *McGraw*, 6 Mich. 441; *Abbott* v. *Aspinwall*, 26 Barb. 202 ; *Burr* v. *Wilcox*, 22 N. Y. (Smith) 551 ; *Dennis* v. *Hopper*, 18 Ill. 82 ; *Briggs* v. *Penniman*, 8 Cow. 395.

BREESE, J. Section twenty-seven of the act of February 12, 1849, entitled "An act to provide for the construction of plank roads by a general law," provides that the stockholders of every company incorporated under that act, shall be liable in their individual capacity for the payment of the debts of such company for an amount equal to the amount of stock they severally have subscribed or hold in the company, over and above such stock, to be recovered of the stockholder who is such when the debt is contracted, or of any subsequent stockholder. By the twenty-ninth section, it is provided that in any action against any company formed under this act, the plaintiff may include, as defendants, any one or more of the stockholders of the company who shall be liable to contribute to the payment of the plaintiff's claim, and judgment may be rendered against them also, as well as against the company. (Scates' Comp. 534.)

In the declaration, the plaintiff alleges that the corporation derived its existence in virtue of this act, and that the several persons joined in the suit with the corporation, of whom appellant was one, were, at the time the indebtedness accrued, severally stockholders (setting forth the number of shares held by each, and the par value thereof) in the corporation, and as such jointly and severally liable, with the corporation, to the amount of their stock, and alleging that the stock so held by the individual defendants, was not stock originally subscribed but purchased in the market, and rely upon the sections of the act above quoted.

The defendants pleaded non-assumpsit, and several special pleas, which we do not consider necessary to notice, as the general issue opens the inquiry into all the points presented by them. The amendatory act of January 28, 1851, could be given in evidence under the general issue, accompanied by proof of payment of the stock. This amendatory act is as follows: That the twenty-seventh section (above cited) be and the same is hereby so amended, that any subscriber to the capital stock of any plank road to be constructed in this State, under said law, shall not be responsible beyond the actual amount of stock so by him subscribed, and so much of said law as conflicts herewith, be and the same is hereby repealed. (Scates' Comp. 535.)

The question would arise, under the general issue, is the appellant a subscriber within the meaning of this act?

The proof shows that appellant, at the time the indebtedness accrued against the corporation, held twenty-two shares of stock, of the par value of fifty dollars per share—that of these shares nine of them were his original subscription, the remaining thirteen having been purchased by him. It was admitted on the trial, that the full amount of all these shares originally subscribed and purchased had been paid in full into the capital stock of the company, under the several calls and assessments made under their charter and by-laws, before the debt was contracted on which this suit was brought.

We do not entertain a doubt on the question. When it is considered, that the object of the amendatory act was to relieve

against an acknowledged hardship caused by the harsh provisions of the original act, it must receive a liberal interpretation. The legislature did not, in providing this remedial law, mean subscribers merely—such persons who had originally become stockholders by an actual subscription to the capital stock, but those who held the stock by subscription, by purchase, by devise, or by any other mode—in short, it designed to include stockholders of every description. By any other construction, the purposes of the amendatory act could not be accomplished. As to nine shares, appellant was an original subscriber as admitted. By the purchase of the other thirteen shares, on which he paid the calls and assessments when made by the corporation, he was subrogated to all the rights and liabilities of the original subscriber, and became, to all intents and purposes, the subscriber.

It is very clear, the legislature did not intend to make a distinction between the different descriptions of stockholders, or class them, but intended to provide, that all of every description should be liable only to the amount of their stock, no matter in what way it was obtained or held. This was the evident purpose of the law, and we are bound to give it this effect. It is very pertinently asked by the appellant's counsel, can it be pretended that the heirs, executors or administrators of a subscriber to this stock, to whom it would pass by operation of law, would be liable, whilst the subscriber himself was exempt? They would not come within the words of the amendatory act, yet they are undoubtedly within its spirit and intention, and so of this appellant and of others similarly situated.

It is further objected by the appellant, that the plaintiff failed to prove that the corporation was organized under the general law. To this it is replied, that such objection was not specially pointed out in the court below on the trial of the cause, so that an opportunity might have been afforded to obviate it by proof; and further, that the appellant is estopped from questioning the fact of incorporation by the terms of a written stipulation between the parties found in the record.

This point, as here raised, does not come within any of the

decisions to which reference is made by the counsel for appellee. The plea of non-assumpsit admitted the existence of the corporation and that only. All other averments of the declaration, save that, were directly in issue by the plea, one of which was, the organization under the general law, by the twenty-ninth section of which, the plaintiff was authorized to join the stockholders in his suit against the company. It was a necessary part of the plaintiff's case that he should prove this controlling fact, as, without it, the joinder of these parties was not authorized. It was not the business of the defendant, to make this suggestion to the plaintiff; it was an indispensable part of his case, and such proof should have been made, for *non constat* but the company was organized under a special charter containing no such power to join parties who could not be joined without express law allowing it. The admission on the record is nothing more than an admission of the existence of the corporation, but under what law and with what powers, is not admitted, but put directly in issue by the plea of non-assumpsit.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*